IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID JAMES KWIATKOWSKI,

Petitioner,

vs.

KATHLEEN DICKINSON, Warden,
California Medical Facility,

Respondent.

No. 2:10-cv-00466-JKS

MEMORANDUM DECISION

David James Kwiatkowski, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Kwiatkowski is currently in the custody of the California Department of Corrections, incarcerated at the California Medical Facility, Vacaville, California. Respondent has answered, and Kwiatkowski has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

In September 1996 Kwiatkowski was convicted in the Shasta County Superior Court of Assault on a Child Causing Death under California Penal Code § 273(a) and (b). The trial court sentenced Kwiatkowski to an indeterminate prison sentence of fifteen years to life. Kwiatkowski does not challenge his conviction or sentence in this proceeding.

In May 2008 Kwiatkowski appeared before the California Board of Parole Hearings ("Board") for his initial parole consideration hearing. The Board denied Kwiatkowski parole for a period of two years. Kwiatkowski timely challenged the decision of the Board in a habeas proceeding in the Shasta County Superior Court, which denied his petition is an unreported,

reasoned decision.  The California Court of Appeal, Third Appellate District, denied his

subsequent petition for habeas relief without opinion or citation to authority, and the California

Supreme Court did the same on January 13, 2010.  Kwiatkowski timely filed his Petition for

relief in this Court on February 21, 2010.

Because the facts surrounding the conviction are well known to the parties and are

unnecessary to an understanding of this decision, they are not repeated here.

## II.  GROUNDS RAISED/DEFENSES

In his Petition Kwiatkowski raises two grounds:  (1) the action of the Board was

unsupported by sufficient evidence; and (2) requiring a prisoner to express sufficient insight as a

condition of granting parole violates the *Ex Post Facto* Clause.  Respondent does not assert any

affirmative defense.[1]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[2]  The Supreme Court has explained that "clearly established Federal law" in

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

---

[1] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

[2] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

time of the relevant state-court decision."[3]  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.[4]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[5]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be "objectively unreasonable," not just "incorrect or erroneous."[6]  The Supreme Court has made

clear that the objectively unreasonable standard is "a substantially higher threshold" than simply

believing that the state-court determination was incorrect.[7]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[8]  In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state court criminal trial is whether the error had a substantial

---

[3] *Williams*, 529 U.S. at 412 (alteration added).

[4] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[5] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[6] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[7] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[8] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

and injurious effect or influence in determining the outcome.[9]  Because state court judgments of

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden

of showing by a preponderance of the evidence that he or she merits habeas relief.[10]

> The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[11]

> In applying this standard, this Court reviews the "last reasoned decision" by the state

court.[12]  State appellate court decisions that summarily affirm a lower court's opinion without

---

[9] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[10] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[11] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[12] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

explanation are presumed to have adopted the reasoning of the lower court.[13]  This Court gives

the presumed decision of the state court the same AEDPA deference that it would give a

reasoned decision of the state court.[14]

      Under California's unique habeas procedure, a prisoner who is denied habeas relief in the

superior court files a new original petition for relief in the court of appeal.  If denied relief by the

court of appeal, the defendant has the option of either filing a new original petition for habeas

relief or a petition for review of the court of appeal's denial in the California Supreme Court.[15]

This is considered as the functional equivalent of the appeal process.[16]  Under AEDPA, the state

court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

by clear and convincing evidence.[17]  This presumption applies to state-trial courts and appellate

courts alike.[18]

---

[13] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[14] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[15] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[16] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

[17] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[18] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*,

IV.  DISCUSSION

Ground 1:  Insufficient Evidence

Kwiatkowski contends that the evidence was insufficient to support the Board's finding

that he posed an unreasonable risk of danger to society if released on parole.  The Shasta County

Superior Court rejected Kwiatkowski's argument:

> The court applies the "some evidence" standard to review the Board's decision.  Under the "some evidence" standard, the Board's decision will be upheld as long as some evidence supports the conclusion that the petitioner is unsuitable for parole because he is a threat to public safety.  (*In re Shaputis* (2008) 44 Ca1.4th 1241).  The record shows the Board denied parole based upon several factors.  The presiding commissioner indicated that:
>
>> [t]here were a number of factors that we looked into.  The first I'm going to speak to is the commitment offense itself.  And we do want to note that this was carried out in an especially cruel and callous manner.  This child, two years old, a child that you had lived with, he and his mother, for a brief six-month period.  Approximately five months into that time frame apparently you took actions that were beyond disciplinary in nature and became violent in that you started striking him to deter the child from crying apparently or other activities that you felt were inappropriate and unnecessary.  But that escalated to three different times that you recall.  And, the one thing that troubled the Panel to some degree is that you were, and I'm not sure if you were trying to protect your recollection of that or whether you really don't recall, but one of the areas that was of particular concern is that you don't recall actually striking the child as many times as the autopsy revealed that he had been hit....
>>
>> (Transcript of Parole Hearing at page 1 of Decision, lines 13-24; page 2 of Decision, lines 1-8).
>
> Further, the presiding commissioner was concerned that petitioner down-played another past instances of violence.  And it was interesting how you characterized your actions with her [your sister] as placing your hand on her when actually that - you placed your hand, if that's how you want to characterize it, in such a way that it left marks around her neck.  That seems to be, in the Panel's mind, an understatement of what occurred, and then when her boyfriend took issue with your treatment of your sister, you armed yourself with a knife and displayed that in a threatening way, and that was that incident.  But it was odd to the Panel that you would describe essentially a - an assault on her as placing your hands on her.

_____

290 F.3d 1030, 1035 (9th Cir. 2002))).

(Transcript of Parole Hearing at page 4 of Decision, lines 1-12).

While the Board was pleased with petitioner's behavior in prison and parole plans, the Board felt that petitioner did not have a true sense of remorse, stating:

> And it's not that you're required to do it, but what is required is that we have some understanding that you have a deep abiding level of remorse over this, and it's more than just saying I'm sorry I did this.  And we see - we conduct many, many of these hearings and find many different ways to say the same thing.   But typically what you say is backed up in the psychological evaluation to a lower rate, and we believe that is something that you can get to, and you should get to.

(Transcript of Parole Hearing at page 5 of Decision, lines 17-24; page 6 of Decision, lines 1-2).

The Board's decision was not based solely on the commitment offense.  The Board's decision was also based upon the petitioner's lack of remorse and lack of a true understanding of what he did and why he did it.  Under those circumstances, the Board was convinced there is a likelihood petitioner could commit other acts of violence if released.  There is some evidence in the record to support the Board's finding that petitioner currently poses a threat to public safety.[19]

After briefing in this case was completed, the United States Supreme Court decided *Swarthout v. Cooke*.[20]  This Court must decide the case on the law as it exists at the time this Court renders its decision, and if controlling law changes while the case is pending, this Court applies the law as changed.[21]  Thus, although it represents a change in controlling law, *Cooke* forecloses Kwiatkowski's arguments *vis-a-vis* California's "some evidence" rule.

Generally, when a higher court issues new controlling authority after briefing is complete, this Court requests further briefing from the parties addressing the new authority.  The Supreme Court decision in *Cooke*, however, is so clear that further briefing would unduly prolong this case without any possibility of changing the result.  The Supreme Court has limited federal habeas

---

[19] Docket No. 1 at 181-82.

[20] 131 S. Ct. 859 (2011) (per curiam).

[21] *See Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 281-82 (1969); *Lambert v. Blodgett*, 393 F.3d 943, 973 n.21 (9th Cir. 2004).

review to the procedures followed by the Board and the Governor, and defined with care what it meant by the applicable procedures.  No longer may this Court consider how the California courts applied California law in the parole suitability context.[22]  Under these circumstances further briefing would not aid this Court in reaching a decision.

It is well-established by Supreme Court precedent that there is no constitutional or inherent right of a convicted person to be conditionally released on parole before the expiration of a sentence.[23]  That a California prisoner has a liberty interest in parole protected by the procedural safeguards of the Due Process Clause of the Fourteenth Amendment is settled.[24]  Because the only federal right at issue in this case is procedural, the relevant inquiry is whether Kwiatkowski received due process.[25]  The Constitution only requires that a prisoner be allowed an opportunity to be heard and be provided with a statement of the reasons why parole is denied, nothing more.[26]  Kwiatkowski contends that the decision of the Board was unsupported

---

[22] *Cooke*, 131 S. Ct. at 862-63 ("The short of the matter is that responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business."); *see also Styre v. Adams*, 645 F.3d 1106, 1108 (9th Cir. 2011); *Miller v. Oregon Bd. of Parole and Post Prison Supervision*, 642 F.3d 711, 716-17 (9th Cir. 2011); *Pearson v. Muntz*, 639 F.3d 1185, 1191 (9th Cir. 2011).

[23] *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979).

[24] *Hayward v. Marshall*, 603 F.3d 546, 561-64 (9th Cir. 2010) (en banc), *overruled sub silentio on another point by Cooke,* 131 S. Ct. at 862-63; *see Pearson v. Muntz*, 606 F.3d 606, 608 (9th Cir. 2010) (per curiam), *overruled sub silentio on another point by Cooke,*131 S. Ct. at 862-63.

[25] *See Cooke*, 131 S. Ct. at 861.

[26] *Id*. at 862 (citing *Greenholtz*, 442 U.S. at 16).

by some evidence as required by California law.[27]  "[I]t is of no federal concern . . . whether California's 'some evidence' rule of judicial review (a procedure beyond what the Constitution demands) was correctly applied."[28]  California prisoners are allowed to speak at their parole hearings, to contest the evidence against them, they are afforded access to their records in advance, and are notified of the reasons why parole is denied.  That is all that due process requires.[29]  "'Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.'"[30]  Because Kwiatkowski has failed to establish a wrong of constitutional dimension he is not entitled to relief under his first ground.

Ground 2:  *Ex Post Facto* Claim

Among the factors that the Board considered in determining Kwiatkowski's unsuitability for parole was his lack of insight into the circumstances of and his reasons for committing his crime.  Kwiatkowski contends at the time that he committed his crime (April 1996) indeterminately sentenced life-prisoners were not required to express sufficient insight into the circumstances of the commitment offense.  According to Kwiatkowski:

> Assuming 'lack of insight' can be adequately defined and given objective meaning, and assuming it can validly be said that petitioner in this case does not have

---

[27] *See In re Lawrence*, 190 P.3d 535 (Cal. 2008); *In re Shaputis*, 190 P.3d 573 (Cal. 2008).

[28] *Cooke*, 131 S. Ct. at 863.

[29] *Id.* at 862.

[30] *Smith v. Philips*, 455 U.S. 209, 221 (1982) (citations omitted); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do not hold a supervisory power over the courts of the several states." (quoting *Dickerson v. United States*, 530 U.S. 428, 438 (2000))).

'full insight,' there remains the question of what relevance this has in view of the uncontroverted applicability of every other suitability criteria to petitioner.

There is nothing within the California Penal Code, nor within departmental rules and regulations (Title 15, Division 2) is it required that a prisoner applying for parole must articulate sufficient insight before establishing their suitability for parole.

Petitioner was first required to express sufficent [*sic*] insight into the circumstances of his crime during. his mental health evaluation performed by Dr. Record for consideration by the Board during his parole suitability hearing now being challenged.  Yet, when petitioner initially elected not to discuss his crime as permitted by the California Penal Code, Section 5011, his mental health evaluator faulted him for not discussing his crime, claiming lack of insight.

Then in further violation of petitioner's rights, the Board, during his hearing, utilized that same psychological evaluation which faulted petitioner for exercising his right under Penal Code 5011 not to discuss his crime.  (see Exhibit A, Reporter's Transcript (R.T.), page 91, line 3-7).

Therefore, the Board's use of petitioner's 'lack of insight' which derived from an erroneous assessment rendered by petitioner's mental health evaluator, solely because petitioner initially refused to discuss his crime, clearly shows the Board's attempt to ignore the overwhelming evidence of rehabilitation and suitability contained within petitioner's record before the Board during the hearing now being challenged.  Such practices by the by the Board of Parole Hearing (and the Governor) violates the ex post facto clause of both state and federal constitutions.[31]

Kwiatkowski presented this claim for the first time in his petition to the California Court of Appeal and again in his petition to the California Supreme Court; consequently, no California court addressed this claim on the merits.  When there is no reasoned state-court decision denying an issue presented to the state, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[32] "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."[33]  Where the presumption applies, this Court must perform

---

[31] Docket No. 1 at 9-10.

[32] *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

[33] *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

10

an independent review of the record to ascertain whether the state-court decision was "objectively unreasonable."[34]  In conducting an independent review of the record, this Court presumes that the relevant state-court decision rested on federal grounds,[35] giving that presumed decision the same deference as a reasoned decision.[36]  The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams*. . . . Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[37]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[38]

---

[34] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (quoting *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam)).

[35] *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991) ("The presumption at present applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision."); *see also Harris*, 489 U.S. at 263.

[36] *Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[37] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (citation omitted). *But cf. Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) ("Our standard of review is not controlled by *Delgado v. Lewis* . . . . There, we held that where a state court provides no rational for a decision, a habeas court does not apply de novo review, but instead determines whether the state decision was objectively unreasonable based on its independent reading of the record.  Here, however, the state court was not silent as to its reasoning . . . .  Therefore, we review de novo whether Lewis waived his right to conflict free counsel . . . .").

[38] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

In *Garner*, the Supreme Court made clear that retroactive changes to a state's parole laws may, in some instances, violate the *Ex Post Facto* Clause.[39]  In order to establish an *ex post facto* violation based on a state's retroactive application of a parole statute, a prisoner must demonstrate that the new statute "creates a significant risk of prolonging [the prisoner's] incarceration."[40]  Where, however, a change in the law does nothing more than alter the method of granting parole under identical substantive standards, the *Ex Post Facto Clause* is not implicated.[41]  *Ex post facto* analysis of a facially neutral parole law requires a case-specific, fact-intensive analysis regarding the risk posed by the law to the particular prisoner challenging its application.[42]

Although it is not clear in his Petition what he bases his *ex post facto* claim on, in his Traverse it appears that Kwiatkowski claims that this factor as a reason for the denial of his parole did not exist until the California Supreme Court decided *Shaputis* in 2008.[43]  Initially this Court notes that, contrary to Kwiatkowski's contention, the California Supreme Court recognized "lack of insight" into one's criminal conduct as an appropriate factor for consideration in denying parole at least as early as 1979.[44]

---

[39] *Garner v. Jones*, 529 U.S. 244, 250 (2000) (citing *Lynce v. Mathis*, 519 U.S. 433, 445-46 (1997)).

[40] *Id.*

[41] *See Cal. Dept. of Corr. v. Morales*, 514 U.S. 499, 507-08 (1995) (holding that a change to allowing the Board to increase the time between reviews did not violate the *Ex Post Facto* Clause).

[42] *See, e.g., Garner*, 529 U.S. at 255 ("[A prisoner] must show that as applied to *his own* sentence the law created a significant risk of increasing his punishment." (emphasis added)).

[43] Docket No. 12 at 6.

[44] *See In re Owen E.*, 592 P.2d 720, 721-22 (Cal. 1979).

Kwiatkowski's argument misinterprets both *Shaputis* and the scope of the regulation

applied in *Shaputis*.  The regulation at issue in *Shaputis* provides in relevant part:

> (b) Information Considered.  All relevant, reliable information available to the panel
> shall be considered in determining suitability for parole.  Such information shall
> include the circumstances of the prisoner's social history; past and present mental
> state; past criminal history, including involvement in other criminal misconduct
> which is reliably documented; the base and other commitment offenses, including
> behavior before, during and after the crime; past and present attitude toward the
> crime; any conditions of treatment or control, including the use of special conditions
> under which the prisoner may safely be released to the community; and any other
> information which bears on the prisoner's suitability for release.  Circumstances
> which taken alone may not firmly establish unsuitability for parole may contribute
> to a pattern which results in a finding of unsuitability.[45]

To the extent that Kwiatkowski argues that the regulation does not encompass insight, he

overlooks the inclusive nature of the regulation to encompass all relevant, reliable information

that bears on his suitability for parole.  Taken in proper context, the discussion regarding "lack of

insight" in *Shaputis* is analogous to Kwiatkowski's attitude towards the lack of understanding of

the underlying commitment crime and the reason(s) for its commission.[46]  This is hardly "new."

Even if it were "new," Kwiatkowski must still show that the new rule "create[d] a

significant risk of prolonging [Kwiatkowski's] incarceration."[47]  It is not sufficient that it

---

[45] Cal. Admin. Code, tit. 15, § 2402 "Parole Consideration Criteria and Guidelines for
Murders Committed on or After November 8, 1978, and Specified Attempted Murders."  As the
California Supreme Court noted in *Shaputis*, this provision is identical to § 2281(b), applicable to
all life prisoners.

[46] 190 P.3d 573, 584-85 (Cal. 2008).

[47] *Garner*, 529 U.S. at 251; *Moor v. Palmer*, 603 F.3d 658, 664 (9th Cir. 2010).

"create[d] only the most speculative and attenuated risk of increasing the measure of punishment attached to covered crimes."[48]  Here, that Kwiatkowski "lacked insight" into the underlying commitment offense or his conduct in connection therewith did not create any greater increased risk of prolonged incarceration than did the addition of a psychological review requirement in *Moor*.[49]

The arguments advanced by Kwiatkowski are more akin to either a weight of the evidence or relevance argument than to an *ex post facto* claim.  This Court is precluded from re-weighing the evidence.  The role of this Court is to simply determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain the factual determination made.[50]  The factors to be considered in making a parole determination and the weight to be given each factor are purely a question of California law.  As noted above, the Supreme Court's decision in *Cooke* foreclosed this Court's consideration of how California courts apply California law in the parole suitability context.[51]

On the record of this case, in light of *Morales*, *Garner*, and *Moor*, this Court cannot find that the assumed decisions of the California Court of Appeal or the California Supreme Court were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state courts rendered their decisions or "w[ere] based on an unreasonable determination of the facts in light of the evidence

---

[48] *Cal. Dept. of Corr. v. Morales*, 514 U.S. 499, 514 (1995); *Newman v. Beard*, 617 F.3d 775, 785 (3d Cir. 2010).

[49] *Moor*, 603 F.3d at 665-66.

[50] *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).

[51] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam).

presented in the State court proceeding."[52]  Kwiatkowski is not entitled to relief under his second ground.

## V.  CONCLUSION AND ORDER

Kwiatkowski is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[53]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[54]

The Clerk of the Court is to enter judgment accordingly.

Dated: March 13, 2012.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[52] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[53] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude  the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[54] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.